UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
'10 MAR 26 PM 3:06
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS

| | |
|---|---|
| THE COLLEGE NETWORK, INC., | ) |
| Plaintiff, | ) |
| | ) 1:10-cv-0370 LJM-DML |
| | ) CASE NO. _____ |
| v. | ) |
| | ) |
| CINCINNATI INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

For its Complaint against Defendant Cincinnati Insurance Company ("CIC"), Plaintiff The College Network, Inc. ("TCN") states and alleges as follows:

## I.

### Parties and Jurisdiction

1. TCN is an Indiana corporation with its principal place of business located at 3815 River Crossing Parkway, Suite 260, Indianapolis, Indiana 46240.

2. Upon information and belief, CIC is an insurance company organized under the laws of Ohio with its principal place of business in Fairfield, Ohio.

3. This Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1332 because TCN and CIC are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this

District; and a substantial part of the property that is the subject of this action is situated in this District.

## II.

## General Allegations

5. At all times relevant to the allegations in this Complaint, TCN is the insured under CIC Insurance Policy Number CPP 0826918 (the "Policy").

6. The Policy contains a Crime Coverage Part Declaration, which includes Employee Dishonesty Coverage.

7. Attached hereto as Exhibit A is a true and correct copy of the Policy's Crime Coverage Part Declarations.

8. The Policy's Employee Dishonesty Coverage Form provides as follows:

   (i) CIC will pay the loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

   (ii) Covered Property means "Money," "securities," and "property other than money and securities."

   (iii) Covered Cause of Loss means "Employee Dishonesty."

   (iv) Employee Dishonesty means dishonest acts committed by an employee, ... , acting alone or in collusion with other persons, ..., with the manifest intent to:

   (1) Cause TCN to sustain Loss; and

   (2) obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

   (a) The employee; or

        (b)    Any person or organization intended by the employee to receive that benefit.

9.    The Policy limit for Employee Dishonesty Coverage is $500,000.00.

10.    TCN is in the business of providing educational materials and services to individuals seeking certificates and degrees.

11.    TCN has sales representatives in various states that sell TCN's educational materials and services.

12.    TCN pays its sales representatives a commission for the sale of TCN's educational materials and services.

13.    TCN employed an individual ("Employee") from January 17, 2005 to May 1, 2009, in TCN's accounting department.

14.    From August 22, 2005 to May 1, 2009, Employee's title at TCN was Commissions Coordinator.

15.    As Commissions Coordinator, Employee's duties included the preparation, issuance and mailing of TCN commission checks to TCN sales representatives throughout the United States for commissions paid on specific sales of TCN educational products and services.

16.    The authorized commission checks prepared and issued by Employee were drawn on a TCN general operating bank account.

17.    On or about April 30, 2009, certain other TCN employees received information that raised questions regarding Employee's performance of her duties.

18. Prior to April 30, 2009, TCN had no knowledge of any wrongdoing or dishonesty on the part of Employee in the performance of her duties.

19. On or about April 30, 2009, TCN launched an internal investigation into Employee's activities.

20. TCN's investigation revealed that Employee was, without the knowledge or authorization of TCN, removing additional sums from TCN's general operating bank account and transferring those sums to certain TCN sales representatives, in addition to sums which may have otherwise been appropriate and authorized ("Employee's Dishonesty").

21. For example, for the period ending March 3, 2009, a TCN sales representative should have received $3,827.87 for commissions related to specific sales of TCN educational products and services. Employee, however, manipulated the TCN computer system and caused it to issue a TCN check to this sales representative in the sum of $4,527.87. The additional $700.00 fraudulently removed from TCN's general operating bank account and transferred to this sales representative was not authorized by TCN, nor owed to, or earned by, this sales representative.

22. The additional $700.00 fraudulently removed from TCN's general operating bank account and transferred to this sales representative was not a commission and was wholly unrelated to the sale of any TCN educational products and services by the sales representative.

23. The fraudulent removal of funds from TCN's general operating bank account and transfer of those funds to this sales representative (and other sales representatives) was intended to benefit the sales representative or Employee, or both. During TCN's internal investigation, TCN learned that Employee requested "kickbacks" from more than one sales representative to whom she fraudulently transferred money.

24. In the example set forth in paragraphs 21-23, and with regard to the Employee Dishonesty Coverage of the Policy:

    (a) The $700.00 fraudulently removed from TCN's general operating bank account and transferred by Employee (and similar fraudulent removals and transfers as alleged herein) to the sales representative constitutes Covered Property in the form of money;

    (b) Employee's fraudulent removal and transfer of the $700.00 (and similar fraudulent removals and transfers as alleged herein) constitutes Employee Dishonesty because:

        (i) Employee is an "employee";

        (ii) the funds were transferred with the intent for TCN to sustain a loss; and

        (iii) the funds were transferred to financially benefit the sales representative or Employee, or both; and

    (c) Employee's Employee Dishonesty is a Covered Cause of Loss.

25. Attached hereto as Exhibit B is a summary of sums Employee fraudulently removed from TCN's general operating bank account and fraudulently transferred as part of Employee's Employee Dishonesty in the same or similar manner as the act specifically described in ¶¶ 21-23 herein.

26. The loss suffered by TCN as a result of Employee's Employee Dishonesty is in excess of $500,000.00.

27. Immediately upon discovery of Employee's Employee Dishonesty, TCN contacted the Federal Bureau of Investigation ("FBI").

28. Upon information and belief, the FBI is conducting a criminal investigation into Employee's Employee Dishonesty.

29. Immediately upon discovery of Employee's Employee Dishonesty, TCN notified CIC of TCN's claim ("TCN's Claim") under the Policy.

30. By letter dated May 15, 2009, CIC acknowledged receipt of TCN's Claim.

31. On July 8, 2009, TCN provided CIC with a Sworn Proof of Loss regarding Employee's Employee Dishonesty.

32. Attached hereto as Exhibit C is a true and correct copy (with names, addresses and any other identifying information redacted) of TCN's Sworn Proof of Loss.

33. On September 30, 2009, CIC conducted a telephone interview of TCN's Chief Financial Officer, Robert Engle, regarding TCN's Claim and Employee's Employee Dishonesty.

34. By letter dated December 8, 2009 (the "Letter of Denial"), CIC denied TCN's Claim.

35. Attached hereto as Exhibit D is a true and correct copy (with names, addresses and any other identifying information redacted) of CIC's Letter of Denial.

36. In summary, CIC asserts in its Letter of Denial that "the only financial benefit received by TCN employees was derived from the receipt of 'inappropriate advances' of 'commissions,'" and "any loss resulting from the failure of a current or former TCN employee to repay 'inappropriate commissions' received is not covered."

37. As a further basis for its denial, CIC contends that CIC "would have to employ accountants to verify the accuracy of TCN's claimed basis."

38. The basis of CIC's denial of coverage is contrary to the plain language of the Policy.

39. The basis of CIC's denial of coverage is not supported by the evidence.

40. CIC has no legitimate basis for denying TCN's Claim.

### III.

### Count I – Breach of Contract

41. TCN incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42. The Policy issued by CIC to TCN constitutes a valid contract of insurance.

43. Employee's Employee Dishonesty is a Covered Cause of Loss under the Policy.

44. Employee's Employee Dishonesty has caused TCN to suffer a loss to Covered Property, as defined in the Policy, which loss is more fully described on Exhibit B hereto.

45. CIC's denial of coverage to TCN for the Employee Dishonesty described herein is a breach of the Policy.

46. TCN has been damaged by CIC's breach of the Policy.

47. TCN has complied with all of its obligations under the Policy and has not excused CIC's nonperformance.

WHEREFORE, TCN prays for judgment in its favor and against CIC in an amount to be proven at trial, together with pre-judgment interest and costs, and all other relief as is just.

### IV.

### Count II – Failure to Deal in Good Faith

48. TCN incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

49. By virtue of the issuance of the Policy to TCN, CIC had a legal duty to deal in good faith with TCN.

50. CIC failed to act reasonably to investigate TCN's Claim prior to its denial.

51. CIC's refusal to pay proceeds to TCN pursuant to the Policy is wrongful and unfounded.

52. CIC had knowledge that it had no rational, good-faith basis for the denial of TCN's Claim.

53. CIC's unfounded denial of TCN's Claim constitutes a breach of CIC's duty to deal with its insured, TCN, in good faith.

54. TCN has been damaged by CIC's breach of its duty of good faith.

55. CIC has acted with malice, fraud, gross negligence and/or oppressiveness with respect to TCN's Claim.

56. CIC's actions are not the result of a mistake of fact or law, honest error or judgment, or mere negligence.

57. CIC's actions warrant an award of punitive damages and attorneys' fees to TCN.

WHEREFORE, TCN prays for judgment in its favor and against CIC in an amount to be proven at trial, together with attorneys' fees, punitive damages, costs and prejudgment interest, and all other relief as is just.

## DEMAND FOR TRIAL BY JURY

TCN, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

DONINGER TUOHY & BAILEY LLP

By: _____
Thomas A. Brodnik (#14508-49)
John J. Moore (#20633-32)
Anthony Ratliff (#18124-49)

tbrodnik@dtblegal.com
jmoore@dtblegal.com
aratliff@dtblegal.com
DONINGER TUOHY & BAILEY LLP
50 South Meridian Street, Suite 700
Indianapolis, Indiana 46204
317-638-2400 (Telephone)
317-633-6618 (Facsimile)
Attorneys for Plaintiff
The College Network, Inc.