UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE COLLEGE NETWORK,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | )<br>) | |
| CINCINNATI INSURANCE CO.,<br>    *Defendant/Third-Party Plaintiff*, | )<br>)<br>) | 1:10-cv-0370-JMS-DML |
| *vs.* | )<br>)<br>) | |
| SHANNON GREENE, et al.,<br>    *Third-Party Defendants*. | )<br>) | |

**ENTRY REGARDING JURISDICTION OVER
CINCINNATI'S CLAIM AGAINST THIRD-PARTY DEFENDANTS**

In January 2011, the Court held oral argument regarding whether the Court has jurisdiction over Defendant/Third-Party Plaintiff Cincinnati Insurance Company's ("Cincinnati") claim against Third-Party Defendants Shannon Greene, Gene Murden, Clyde Gebauer, Chad Radt, Damon Luster, Starla Mangold, Rene Lagemann, Beryl Wilder, Chad Mitchell, Francis Murphy, and Nicole Waterford. The Court will refer to Ms. Greene by name and to the other individuals collectively as the Third-Party Defendants.

**I.**

**BACKGROUND**

On July 8, 2009, Plaintiff The College Network ("TCN") submitted a proof of loss to its insurer, Cincinnati, under an Employee Dishonesty insurance policy. [Dkt. 1-3.] TCN identified

Third-Party Defendant Shannon Greene as the employee responsible for its loss on the Proof of Loss claim form provided by Cincinnati.[1] [Dkt. 1-3 at 1.]

TCN made the following allegations in a detailed statement attached to its claim form. [Dkt. 1-3 at 3.] TCN hired Ms. Greene in January 2005 and promoted her to Commissions Coordinator in August 2005. [Dkt. 1-3 at 3.] As Commissions Coordinator, Ms. Greene's duties included the preparation, issuance, and mailing of TCN commission checks to TCN sales representatives located throughout the United States. [*Id.*] Commissions were based on the sale of TCN educational products. [*Id.*] On April 30, 2009, TCN launched an internal investigation into Ms. Greene's payment of sales representatives. [*Id.*] After its investigation, TCN concluded that Ms. Greene had been paying certain sales representatives inappropriate advances in addition to what they were owed for sales. [*Id.*] TCN believes that some sales representatives paid Ms. Greene kickbacks in return for the overpayments. [*Id.*] TCN filed a claim with Cincinnati under its Employee Dishonesty Policy for $647,899.73 as a result of Ms. Greene's alleged conduct. [*Id.* at 1, 3.]

In December 2009, Cincinnati denied TCN's claim for not establishing a compensable loss within the scope of coverage. [Dkt. 1-4 at 1.] In its denial letter, Cincinnati noted that TCN has a complicated method of calculating and recalculating the amount of commissions due to each sales representative. [Dkt. 1-4 at 3.] According to Cincinnati, it is necessary to differentiate between different types of payments to determine which advances were paid with the intent to defraud TCN and which advances were paid to employees who were not part of any scheme to steal money from TCN. [Dkt. 1-4 at 3.] Cincinnati cited TCN's Chief Financial Officer for the

---

[1] The Proof of Loss contained in the record redacts Ms. Greene's name. [Dkt. 1-3 at 1.] Cincinnati confirmed at oral argument that the employee TCN identified on the Proof of Loss was Ms. Greene.

proposition that "most of the 41 sales representatives who received 'inappropriate advances' did not even realize they were being overpaid." [Dkt. 1-4 at 3.] Cincinnati concluded that TCN's complex commissions compensation formula "is a good illustration of the reason that the plain text of TCN's policy states that loss resulting from overpayment of employee compensation, including overpayment of 'commissions', is not the type of dishonest conduct that is covered." [Dkt. 1-4 at 4.] To verify the accuracy of TCN's claim, Cincinnati contends that it would have to employ accountants to verify the amount of commissions payable and subject to recapture for each of the 41 sales representatives at issue. [*Id.*] For these reasons, Cincinnati denied TCN's request for coverage.

In March 2010, TCN filed a Complaint against Cincinnati for breach of contract and failure to deal in good faith. [Dkt. 1.] TCN's Complaint is based on the conduct of a single individual, identified as "Employee," who was the Commissions Coordinator for TCN until May 2009.[2] [Dkt. 1 at 3.] In response, Cincinnati filed a Third-Party Complaint against the Third-Party Defendants. [Dkt. 62.] If judgment is entered in favor of TCN on TCN's claim against Cincinnati, Cincinnati requests recovery against Ms. Greene for the full amount of such judgment and judgment against the Third-Party Defendants for the amount of excess commissions received by those individuals. [Dkt. 62 at 5.]

In January 2010, the Court held a hearing regarding whether it has jurisdiction over Cincinnati's claim against the Third-Party Defendants. In advance of the hearing, Cincinnati filed a memorandum asserting that the Court has supplemental jurisdiction over its third-party claim pursuant to 28 U.S.C. § 1367. [Dkt. 72 at 3.] Specifically, Cincinnati contends that its third-

---

[2] The Court presumes that TCN did not identify Ms. Greene by name because she was not named as a party to the action at that time.

party claim arises out of a "common nucleus of operative facts" that this Court must adjudicate in order to grant the relief TCN demands in its Complaint against Cincinnati. [Dkt. 72 at 6.]

## II.

### DISCUSSION

The Court has an independent duty to assure itself that jurisdiction over a claim is secure. *Eke v. Mukasey*, 512 F.3d 372, 376 (7th Cir. 2008). Although the Court has subject matter jurisdiction over the underlying claims between TCN and Cincinnati, the jurisdictional propriety of Cincinnati's third-party claim must be assessed individually. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67 (U.S. 1996).

Cincinnati asserts that the Court can exercise supplemental jurisdiction over its claims against the Third-Party Defendants under 28 U.S.C. § 1367 because those claims are part of the same case or controversy as TCN's claims against Cincinnati.[3] The Court may exercise supplemental jurisdiction over a third-party claim against non-diverse individuals if those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." *Ball ex rel. Envtl. Conservation & Chem. Corp. Site Trust Fund v. Versar, Inc.*, 2002 U.S. Dist. LEXIS 17389 (S.D. Ind. 2002). Supplemental jurisdiction over third-party state law claims between non-diverse parties does not exist where

---

[3] The Court does not have diversity jurisdiction over Cincinnati's claims against the Third-Party Defendants because one of the Third-Party Defendants—Nicole Waterford—is an Ohio citizen like Cincinnati. [Dkt. 62 at 1, 2]; *see Caterpillar*, 519 U.S. at 67 (for purposes of diversity jurisdiction, the citizenship of defendant/third-party plaintiff and third-party defendant is the relevant inquiry). Additionally, although a plaintiff may aggregate the amount against defendants to satisfy the amount in controversy requirement if the defendants are jointly liable, a plaintiff must satisfy the amount in controversy requirement against each individual defendant if the defendants are severally liable. *LM Ins. Corp. v. Spaulding Enters.*, 533 F.3d 542, 548 (7th Cir. 2008). It appears from Cincinnati's claim that each Third-Party Defendant would be individually liable for its share of the alleged damages, which requires Cincinnati to satisfy the amount in controversy requirement for each Third-Party Defendant. Cincinnati admits that its claims against six of the Third-Party Defendants do not meet the jurisdictional amount. [Dkt. 62 at 2.]

"claims did not arise out of the same transaction or occurrence." *Id.* (citing *Hartford Accident & Indem. Co. v. Sullivan*, 846 F.2d 377, 380, 382 (7th Cir. 1988)).

The Court must determine whether Cincinnati's third-party claims arise out of the same transaction or occurrence as TCN's claim against Cincinnati. TCN's claim seeks coverage under its insurance policy with Cincinnati. TCN identified Ms. Greene as the employee who caused its loss on the Proof of Loss form. [Dkt. 1-3 at 1.] That form provided that "[i]f more than one known Employee has caused this loss, an additional Proof of Loss must be completed for each Employee, signed and notarized and attached hereto." [*Id.*] There is no evidence in the record that TCN completed additional Proof of Loss forms for any employees other than Ms. Greene.

Cincinnati's third-party claim seeks subrogation from the Third-Party Defendants if judgment is entered in favor of TCN and against Cincinnati. [Dkt. 62 at 5.] In support of its claim, Cincinnati cites a provision of TCN's insurance policy that reads:

> Transfer of Your Rights of Recovery Against Others to Us: You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and <u>for which we have paid or settled</u>. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

[Dkt. 72 at 9 (emphasis added).] Cincinnati does not dispute that it has neither paid nor settled TCN's claim. Therefore, although Cincinnati may acquire subrogation rights in the future, it does not possess them at this time.

There are material differences between TCN's coverage claim against Cincinnati and Cincinnati's third-party claim. TCN's claim is based exclusively on Ms. Greene's conduct. Because she is the only employee identified on the Proof of Loss form that TCN submitted to Cincinnati, TCN must prove that Ms. Greene's allegedly dishonest conduct resulted in a covered loss under the policy.

Cincinnati's claim, however, focuses on ten additional parties who are not the subject of TCN's underlying claim. Cincinnati argues that its claims against the Third-Party Defendants arise out of the same operative facts as TCN's claim against Cincinnati because in order for TCN to prove damages, "it must prove the amount of excess compensation <u>Greene intended</u> each of the ten former sales representatives to receive." [Dkt. 72 at 9 (emphasis added).] Contained within Cincinnati's argument, however, is an admission that Ms. Greene's intentions are the issue in TCN's case, not the intentions of other Third-Party Defendants. In fact, as Cincinnati recognized in its letter denying coverage to TCN, "most of the 41 sales representatives who received 'inappropriate advances' did not even realize they were being overpaid." [Dkt. 1-4 at 3.]

The evidence in the record shows that TCN made a coverage claim based on Ms. Greene's actions alone. Therefore, to prove its claim, TCN will have to prove that Ms. Greene acted in a dishonest manner covered by the policy that resulted in a loss. Although TCN will have to prove the amount it was damaged, as Cincinnati admits, <u>Ms. Greene's</u> intentions are the key issue for determining the amount of covered loss. In other words, although testimony from the other Third-Party Defendants may be relevant to show Ms. Greene's intent (or lack thereof) to defraud TCN, whether or not those Third-Party Defendants intended to defraud TCN is irrelevant because TCN's coverage claim is based on Ms. Greene's actions alone.

With the exception of the claim against Ms. Greene, Cincinnati's third-party subrogation claim is too attenuated from TCN's coverage claim to constitute the same case or controversy for purposes of supplemental jurisdiction. Cincinnati's third-party claim against Ms. Greene, however, is part of the same case or controversy as TCN's claim because TCN's claim is also based on the conduct and intent of Ms. Greene. Therefore, the Court dismisses Cincinnati's third-party claim against all of the Third-Party Defendants except Ms. Greene. Nothing in this entry should

be read to preclude TCN, Cincinnati, or Ms. Greene from using the proper procedures to obtain relevant non-party discovery from the dismissed Third-Party Defendants, to the extent that discovery is sought to prove Ms. Greene's intent, or lack thereof, to defraud TCN.

## III.
### CONCLUSION

For the reasons described herein, the Court **DISMISSES** Third-Party Defendants Gene Murden, Clyde Gebauer, Chad Radt, Damon Luster, Starla Mangold, Rene Lagemann, Beryl Wilder, Chad Mitchell, Francis Murphy, and Nicole Waterford **without prejudice**. Third-Party Defendant Shannon Greene remains a party to this action.

02/25/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via Mail:**

DAMON LUSTER
14687 Juliana Ave.
Eastpointe, MI 48021

BERYL WILDER
5232 Fairview Blvd., #3
La Dera Heights, CA 90056

CHAD MITCHELL
60 Walnut Bend Cove
Arlington, TX 38002

FRANCIS MURPHY
3456 Van Wie Drive East
Baldwinsville, NY 43027

NICOLE WATERFORD
815 Frost Road, #1403
Streetsboro, OH 44241

**Distribution via ECF only:**

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

Jonathan M. Bryan
MCNAMARA AND MCNAMARA, LLP
jmbryan@mcnamaralaw.us

Molly Corder Johnson
molly@mojolawoffice.com

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

Robert H. Little
ROBERT H. LITTLE LAW OFFICE
littlelaw@msn.com

Robert John Little
ROBERT LITTLE LAW OFFICES
littlelaw@msn.com

Eric C. McNamar
KELLER MACALUSO LLC
emcnamar@kellermacaluso.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

John J. Moore
DONINGER TUOHY & BAILEY LLP
jmoore@dtblegal.com

Anthony B. Ratliff
DONINGER TUOHY & BAILEY LLP
aratliff@dtblegal.com

Jon Kenneth Stowell
LAW OFFICE OF CINCINNATI INSURANCE
jon_stowell@staffdefense.com

Rebecca A. Trent

ROBERT H. LITTLE LAW OFFICE
littlelaw@msn.com

William H. Woods
MCNAMARA AND MCNAMARA LLP
whwoods@mcnamaralaw.us

J. David Young
LAW OFFICE OF J. DAVID YOUNG
jdyjd@aol.com