UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, *as partial subrogee of The College Network, Inc.*, <br>      *Plaintiff*, <br> <br> vs. <br> <br> SHANNON GREENE, <br>      *Defendant*. | ) <br> ) <br> ) <br> )     1:10-cv-0370-JMS-DML <br> ) <br> ) <br> ) <br> ) |

**ORDER**

Presently pending before the Court is Cincinnati Insurance Company's ("Cincinnati") Motion for Summary Judgment against Third-Party Defendant Sharon Greene. [Dkt. 138.] For the following reasons, the Court grants Cincinnati's motion.

**I.**
**BACKGROUND**

On July 8, 2009, Plaintiff The College Network ("TCN") submitted a proof of loss for $647,899.73 to Cincinnati, its insurer under an Employee Dishonesty insurance policy. [Dkt. 1-3.] TCN identified Shannon Greene as the employee responsible for its loss. [Dkt. 1-3 at 1.]

In its claim form, TCN alleged that it hired Ms. Greene in January 2005 and promoted her to Commissions Coordinator in August 2005. [Dkt. 1-3 at 3.] As Commissions Coordinator, Ms. Greene's duties included the preparation, issuance, and mailing of TCN commission checks to TCN sales representatives located throughout the United States. [*Id.*] Commissions were based on the sale of TCN educational products. [*Id.*] On April 30, 2009, TCN launched an internal investigation into Ms. Greene's payment of sales representatives. [*Id.*] After its investigation, TCN concluded that Ms. Greene had been paying certain sales representatives inappropriate advances in addition to what they were owed for sales. [*Id.*] TCN believes that some sales representatives paid Ms. Greene kickbacks in return for the overpayments. [*Id.*]

1

Cincinnati initially denied TCN's policy claim.  [Dkt. 1-4 at 1.]  In March 2010, TCN filed a Complaint against Cincinnati for breach of contract and failure to deal in good faith.  [Dkt. 1.]  Cincinnati answered and filed a third-party claim for subrogation against Ms. Greene.  [Dkt. 62.]  In her answer to Cincinnati's subrogation claim, Ms. Greene "…refuse[d] to answer the allegations set forth [in the complaint] based upon her rights under the Fifth Amendment to the United States Constitution and Article I, Section 14, of the Indiana Constitution." [Dkt. 91 at 3-5.]

TCN and Cincinnati ultimately settled TCN's coverage claim on January 25, 2012, [dkt. 132 at 2], and that claim was dismissed, [dkt. 128].  Under the terms of the settlement, Cincinnati paid TCN $342,000, [dkt. 139-1 at 1], and, in exchange, TCN assigned its right to "pursue recovery of its payment from Greene and the [employees] who were direct beneficiaries of Greene's misconduct in paying the [employees] money they did not earn and were not entitled to receive from TCN."  [*Id*. at 2.]  In light of the settlement, Cincinnati's claim against Ms. Greene became the sole remaining claim at issue in this action.  [Dkt. 137 at 1 n.1.]

On May 24, 2012, Cincinnati filed the instant motion, asking the Court to grant it summary judgment against Ms. Greene in the amount of $342,000.00, together with interest and costs, on the grounds that there are no genuine disputes as to any material fact and Cincinnati is entitled to judgment as a matter of law.  [Dkt. 139.]  Ms. Greene has not filed a response to Cincinnati's motion for summary judgment.

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  To survive a motion for summary judgment, the non-

moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed and, potentially, the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and

resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

The nonmoving party, however, cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. Of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleadings, but by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Conclusory allegations not supported by the record are not enough to withstand summary judgment." *Basith v. Cook County*, 241 F.3d 919, 928 (7th Cir. 2001).

## III.
### DISCUSSION

Cincinnati has moved for summary judgment on its subrogation claim against Ms. Greene, arguing that there is no genuine dispute of material fact that Ms. Greene's dishonest conduct caused a loss of $342,000. [Dkt. 139 at 6.] In support of its motion, Cincinnati details evidence that it believes establishes that Ms. Greene's conduct caused the losses incurred by TCN, [dkt. 139 at 2-5], and relies on Ms. Greene's invocation of her right not to incriminate

4

herself and her failure to file a response to Cincinnati's motion as an admission to guilt, [dkt. 139 at 11].

### A. Effect of Invoking Fifth Amendment

As previously noted, Mr. Greene invoked her Fifth Amendment right not to incriminate herself both in response to Cincinnati's subrogation claim and in her deposition. [Dkts. 91; 139-1 at 3.] The Court must address the effect of that decision.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. This constitutional right not only protects an individual in a criminal prosecution, but it also protects that individual from questions in a civil proceeding in which the answers might incriminate her in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (internal quotation marks omitted). The Court is allowed to draw an adverse inference against a party who refuses to testify in response to probative evidence offered against her. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Before an adverse inference may be drawn, however, there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege. *Kontos v. Kontos*, 968 F. Supp. 400, 408 (S.D. Ind. 1997) (internal quotation marks omitted). In other words, although the Court may draw an adverse inference against a party asserting her Fifth Amendment privilege, it may not grant summary judgment on that basis alone. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391-92 (7th Cir. 1995). Instead, the moving party must present evidence that it is entitled to summary judgment as a matter of law, and the Court must give reasons other than the party's invocation of the Fifth Amendment for granting the motion. *Id*.

### B. Evidence of Ms. Greene's Conduct

In addition to relying on Ms. Greene's decision to invoke her Fifth Amendment privilege, Cincinnati designates evidence on summary judgment showing that she was responsible for the loss sustained by TCN and Cincinnati. That evidence shows that TCN utilized a computer management system to track the commissions to be paid to its sales representatives based on customer transactions and business generated by its sales representatives. [Dkt. 105-2 at 2.] Once the computer management system calculated the commissions owed, those amounts were downloaded into a spreadsheet. [Dkt. 105-2 at 3.] The spreadsheet contained formula-driven columns based on the tracked data and also contained blank columns for legitimate authorized manual adjustments to the commissions owed to the sales representatives. [*Id.*] Ms. Greene was responsible for reviewing the spreadsheet and making authorized manual adjustments. [Dkt. 105-2 at 3; 107-4 at 21-28.]

TCN's internal investigation revealed that Ms. Greene began paying sales representatives sums in addition to what they were owed in 2006. [Dkt. 1-3 at 3.] This was done in various ways, such as not deducting commissions that were subsequently recaptured, adding dollar amounts to earned commissions, overwriting subtotals and other excel calculations, and not recovering approved advances in subsequent periods. [Dkt. 1-3 at 3; *see also* dkt. 107-4 at 24-28.] Robert Engle, the Chief Financial Officer of TCN at the time of the events in question, conducted an investigation into discrepancies in the spreadsheet and found that excess payments were made to sales representatives as a result of Ms. Greene manually changing amounts in the spreadsheet that were typically formula driven. [Dkt. 107-4 at 21-28.] Ms. Greene neither had the authorization nor the documentation to support these changes. [*Id.*] Ms. Greene received

monetary kick-backs from the sales representatives that received overpayments as a result of her manipulating the spreadsheet. [Dkts. 1-3 at 3; 105-1 at 51.]

Gary Eyler, the Chief Executive Officer and Chairman of TCN at the time of the events in question, testified that Ms. Greene admitted to him that she had manipulated the compensation for various sales representatives. [Dkt. 105-1 at 46.] Specifically, Ms. Greene told Mr. Eyler that she "was trying to play God" and that she "knew [she] was wrong." [*Id.*] Mr. Eyler also spoke with various sales representatives who received the overpayments. [Dkt. 105-1 at 47-48, 51.] One of the representatives admitted that he knew he had received overpayments and that even after he asked Ms. Greene to stop, "she just kept sending him money." [Dkt. 105-1 at 51.] When deposed about the allegations against her, Ms. Greene invoked her constitutional rights not to incriminate herself. [Dkt. 105-1 at 35-44.] Cincinnati paid TCN $342,000 for the loss it claims from Ms. Greene's conduct. [Dkt. 139-1 at 1-2.]

### C. Analysis of Cincinnati's Claim

The Court concludes that Cincinnati has designated sufficient evidence that it is entitled to summary judgment as a matter of law on its claim against Ms. Greene. Specifically, the evidence discussed in the previous section confirms that Ms. Greene intentionally manipulated the spreadsheet used by TCN's accounting department to pay unearned commissions to certain sales representatives and that she received monetary kick-backs as a result of this conduct. In addition to this evidence, the Court is entitled to draw an adverse inference against Ms. Greene for her decision to invoke her Fifth Amendment privilege.

The evidence further establishes that TCN suffered a monetary loss as a result of Ms. Greene's conduct and that Cincinnati paid TCN $342,000 under TCN's insurance policy as a

result of that loss. Ms. Greene failed to respond to Cincinnati's motion and has not challenged the amount of its loss.

It is well established that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola*, 385 F.3d at 1111. The Court concludes that no genuine issue of material fact exists regarding Ms. Greene's conduct, which ultimately led to Cincinnati's loss, or with the amount of Cincinnati's loss. Therefore, Cincinnati is entitled to summary judgment in the amount of $342,000 as a matter of law.[1]

## IV.
### CONCLUSION

For the reasons provided herein, the Court **GRANTS** summary judgment in favor of Cincinnati and against Ms. Greene in the amount of **$342,000**. [Dkt. 138.] Because all claims in this matter are now resolved, final judgment shall issue by separate entry.

08/03/2012

                                                          Hon. Jane Magnus-Stinson, Judge
                                                          United States District Court
                                                          Southern District of Indiana

**Distribution via Electronic Distribution:**

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

Jonathan M. Bryan
MCNAMARA AND MCNAMARA, LLP
jmbryan@mcnamaralaw.us

---

[1] Cincinnati has requested interest and costs. [Dkt. 139 at 11.] Interest will accrue in accordance with the statutory rate, 28 U.S.C. § 1961, and Cincinnati may file a bill of costs pursuant to Local Rule 54-1 if it so desires.

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

Robert H. Little
ROBERT H. LITTLE LAW OFFICE
littlelaw@msn.com

Robert John Little
ROBERT LITTLE LAW OFFICES
littlelaw@msn.com

Eric C. McNamar
KELLER MACALUSO LLC
emcnamar@kellermacaluso.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

John J. Moore
DONINGER TUOHY & BAILEY LLP
jmoore@dtblegal.com

Anthony B. Ratliff
DONINGER TUOHY & BAILEY LLP
aratliff@dtblegal.com

Jon Kenneth Stowell
LAW OFFICE OF CINCINNATI INSURANCE
jon_stowell@staffdefense.com

Rebecca A. Trent
ROBERT H. LITTLE LAW OFFICE
littlelaw@msn.com

William H. Woods
MCNAMARA AND MCNAMARA LLP
whwoods@mcnamaralaw.us

J. David Young
LAW OFFICE OF J. DAVID YOUNG
jdyjd@aol.com